### RIORDAN & CO. v. DOTY.

1. COTTON FUTURES—BURDEN OF PROOF.—Rev. Stat., 1860, places burden of showing that requirements of section as to future delivery of cotton have been complied with, on the plaintiff, yet that does not abrogate the constitutional provision that in law cases jury must be exclusive judges of facts.

2. WRITTEN INSTRUMENTS—LETTER—TELEGRAM—CIRCUIT JUDGE—TESTIMONY BY COMMISSION.—While it is the duty of the Court to construe all writings, yet it is not its duty to pass upon the *force* and *effect* of facts which may be stated in a letter or telegram or testimony taken by commission.

3. NONSUIT—COTTON FUTURES.—There being some testimony tending to show that the seller, at time of sale, intended to deliver the cotton, and that both parties at that time intended that the cotton should be actually delivered and received, nonsuit was improper.

Before GARY, J., Fairfield, February, 1899.   Reversed.

Action by Riordan & Co. against William R. Doty. At close of plaintiffs' case, counsel for defendant made a motion for a nonsuit on the following grounds:

1. That there is no proof to go to the jury that the party making the sale of the alleged cotton was at the time of the making of such sale the owner or assignee of such cotton so alleged to have been sold.   2. That there is no proof that the party making such alleged sale was at the time authorized by the owner or assignee, or his duly authorized agent, to make and enter into such contract, bargain or agreement.

3. That there is no proof that, at the time of making such

contract, bargain or agreement, it was the *bona fide* inten-
tion of both parties thereto that the said cotton, so agreed to
be sold and transferred, should be actually delivered and
received in kind by said parties at the future time mentioned
therein.

The Court gave the following reasons for granting the
motion:

In construing the motion, it seems to me it is necessary to
take into consideration what was the object of section 1859
and the subsequent sections thereto.   What was their pur-
pose?   Those statutes were obviously intended to prevent
the practice of dealing in what is commonly known as
futures—cotton futures—that is the object of them, that is
what those statutes were enacted for.   Now, the complaint
in this case alleges that the alleged sale was for the future de-
livery of cotton.   That much we start out with, the complaint
alleges it.   Now, I will read the section, 1859, stripped of
such verbiage as does not apply to the sale of cotton, and it
would read as follows: Every contract, bargain or agree-
ment, whether verbal or in writing, for the sale or transfer
at any future time of any cotton, shall be void unless the
party contracting, bargaining or agreeing to sell or transfer
the same is, at the time of making such contract, bargain or
agreement, the owner or assignee thereof, or is at the time
authorized by the owner or assignee thereof, or his duly
authorized agent, to make and enter into such contract, bar-
gain or argrement, or unless it is the *bona fide* intention
of both parties to the said contract, bargain or agreement,
at the time of making the same, that the said cotton shall be
actually delivered in kind by the party contracting to sell
and deliver the same, and shall be actually received in kind
by the party contracting to receive the same, at the period in
the future mentioned and specified in the said contract, bar-
gain or agreement.   Now, section 1860: In any and all
actions brought in any Court to enforce such contracts, bar-
gains or agreements, the burden of proof shall be upon the

plaintiff to establish, that at the time of making such contract, bargain or agreement, the party making the same was the owner or assignee of the cotton so agreed to be sold or transferred, or was at the time authorized by the owner or assignee thereof, or his duly authorized agent, to make and enter into such contract, bargain or agreement, or at the time of making such contract, bargain or agreement, it was the *bona fide* intention of both parties thereto that the said cotton so agreed to be sold and transferred should be actually delivered and received in kind by the parties at the future period mentioned therein. In construing section 1861 of that act, which is similar except the penalty is in a different form, the Supreme Court has said that the words "any such contract," refer to section 1859—that is, as to a void contract. Now the burden is upon the plaintiff to prove what? To prove the requirements contained in section 1860, which are that he was at the time authorized by the owner or assignee thereof, or his duly authorized agent, to make and enter into such contract; or that, at the time of making such contract, bargain or agreement, it was the *bona fide* intention of both parties thereto that the said cotton so agreed to be sold and transferred should be actually delivered and received in kind by the said parties at the future period mentioned therein. Now here is the middleman bringing suit against his principal, and, in order for him to sustain his action, the burden is put upon him to show that this transaction doesn't come within what is known as the future sale of cotton; but it must come under such requirements of the statute as would show that it was not a sale in futures, it has to come up to the mark which would distinguish it from that. The burden is upon him to show that. Now, the question is, upon whom does the obligation rest to say whether or not he has shown this by the burden of the proof? Upon the Court; especially so since the evidences of the contract are in writing. Those are matters of evidence that the Court must construe; and construing these telegrams in connection with the testimony of one of the

plaintiffs, I am unable to see wherein he has shown that the requirements as contained in section 1860, which I have just read, have been complied with.    I fail to recall any evidence where he says that it was the intention of the defendant here to receive that cotton in kind; nor do I recall the evidence that would show that the parties who owned the warehouses had cotton there that was to be delivered, the specific bales of cotton, that were to be delivered as the result of this sale. That is necessary to sustain this action; and having failed to show that, I think there is no other alternative but for me to grant the motion for a nonsuit, and especially so since this very case, or facts similar, have been passed upon by the Supreme Court, which has just delivered itself in the opinion read to me.    I see no other alternative.

Mr. McDonald: Mr. Riordan testified it was the *bona fide* intention of Hopkins, Dwight & Co. and Lehmann Bros. actually to deliver and receive this cotton.

The Court: He might do that in a suit between himself and the warehousemen.

Mr. McDonald: Does your Honor hold that Mr. Doty isn't bound by that contract?    Mr. Riordan's testimony is that they made these contracts for Mr. Doty as principal with these other people; that it was the *bona fide* intention of Hanckel & Riordan and Hopkins, Dwight & Co. to actually deliver and receive this cotton.

The Court: I hold that he was a middleman, and he must go further.    That might be good between Riordan & Hanckel and the warehouseman, but Riordan could not use the *bona fide* intention of those parties unless he showed the *bona fides* of this defendant.

Mr. McDonald: Showed Mr. Doty's intention?

The Court: Yes, sir; he is seeking the enforcement of a contract upon which the statute imposes the burden of proof.

It appearing to the satisfaction of the Court that the plaintiffs have failed to make out a case under the statute, it is ordered, that a nonsuit be, and the same is hereby, granted.

From this order plaintiffs appeal on following exceptions :

1. That his Honor erred in holding that it rested upon the Court to determine whether or not the plaintiffs had made out a case under the statute of this State relating to sales for future delivery by the burden of proof, and thereupon holding that the plaintiffs had not made out their case by the burden of proof, when it was clearly a question for the jury, and not for the Court, to determine. 2. For that his Honor erred in holding that there was no evidence in the case going to show that the parties who sold the 400 bales to the defendant were, at the time of such sale, the owners or assignees of said cotton, and granting the nonsuit on that ground, when there was testimony showing such fact, which should have been submitted to the jury, to wit : the testimony of James Riordan, one of the plaintiffs, as to Hopkins, Dwight & Co. and Lehmann Bros. being the owners thereof at the time of said sales. 3. For that his Honor erred in holding that there was no proof that it was the *bona fide* intention of the defendant, Doty, to receive the said cotton in kind, and granting a nonsuit on that ground, when there was evidence to go to the jury on that issue, to wit: the testimony of James Riordan, one of the plaintiffs, to the fact that it was the *bona fide* intention of Hopkins, Dwight & Co. and Lehman Bros. to actually deliver the cotton sold by them, and also that defendant knew that said cotton would be tendered; and when the telegrams of the defendant showed that it was his intention to receive the said cotton. 4. For that his Honor erred in undertaking to decide as to the *weight* and *sufficiency* of the testimony in this case, and granting a nonsuit on that account, when it was solely and entirely for the jury to judge of the weight and sufficiency of the testimony, after hearing the instructions of the Court as to the law. 5. For that his Honor erred in holding that the statute of this State, relating to sales for future delivery, was applicable to the facts of this case, when it appeared that the loss for which plaintiffs brought suit occurred upon sales of spot cotton, which had been received and held by

plaintiffs under the express instructions of the defendant. 6. For that his Honor erred in not holding that, when the defendant gave positive instructions to the plaintiffs to receive the said cotton, and the plaintiffs did receive and hold said cotton, in pursuance of such instructions, such instructions and receipt of the cotton took the transaction out of the statute against sales for future delivery, and created a new implied obligation on the part of the defendant to reimburse plaintiffs for any losses on said spot cotton; and he should have refused the motion for a nonsuit on that ground. 7. For that his Honor erred in holding that the statute against sales for future delivery was applicable to the facts of this case, when it appeared that the action was for losses on spot cotton, and he should have refused the motion for a nonsuit on that ground. 8. For that his Honor erred in granting the motion for a nonsuit, when there was testimony sufficient to submit the case to the jury upon all of the issues; the jury alone being the judges of the weight and sufficiency thereof, and not the Court.

*Mr. J. E. McDonald,* for appellants, cites: *Error to grant nonsuit if there is any competent and relevant testimony in case:* 21 S. C., 101; 41 S. C., 158; 50 S. C., 556; 51 S. C., 154; 49 S. C., 12.

*Messrs. Ragsdale & Ragsdale,* contra, cite: *All questions under these statutes have been settled, and plaintiffs have not been misled:* 45 S. C., 372; 50 S. C., 548; 54 S. C., 382.

September 30, 1899. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This was an action to recover from the defendant an alleged balance due Hanckel & Riordan for money advanced and cash paid for said defendant by said Hanckel & Riordan at the request and for the use of said defendant—the plaintiffs herein being the successors and assignees of said Hanckel & Riordan, and as

such the legal owners and holders of said claim. The defense relied upon is that the claim sued on is founded upon transactions for the purchase and sale of cotton for future delivery in the New York market, and are void under the provisions of our act of 1883, now incorporated in Rev. Stat. of 1893 as sections 1859-1861. The testimony adduced by plaintiffs in support of their claim consisted of telegrams, letters, and the testimony of Riordan, one of the plaintiffs, taken in writing by a commissioner of deeds for South Carolina, residing in New York. At the close of plaintiffs' testimony, the defendant moved for a nonsuit upon the several grounds set out in the "Case," which was granted for the reasons there set forth. The plaintiffs appeal upon the several grounds set out in the record, which, together with the grounds upon which the motion for a nonsuit was based and the reasons of the Circuit Judge for granting the same, should be incorporated by the Reporter in his report of this case.

As was said in the recent case of *Harvey* v. *Doty,* 50 S. C., at page 556, "the only question for this Court is, whether there was a total lack of evidence tending to prove all, or any one, of the material issues in the case. The question is—*not* whether the evidence is *sufficient* to establish plaintiffs' case, for that is a question solely for the jury, and we have no right or disposition to invade their province—but solely whether there was *any* evidence tending to prove plaintiffs' case." If, therefore, the transactions out of which the plaintiffs' claim originated were contracts for the purchase of cotton for future delivery, as seems to have been settled by what this Court held under the former appeal in this case—*Riordan* v. *Doty,* 50 S. C., at page 544—then, as held on the preceding page, the practical inquiry is whether there was any testimony tending to show either one of the following facts: 1st, that the party making the contract for the sale of cotton for future delivery was the owner or assignee thereof at the time the contract was made; or 2d, that the seller was at the time authorized by the owner or

assignee thereof, or his duly authorized agent, to make the sale; or 3d, that it was the *bona fide* intention of both parties—seller and buyer—at the time of making such contract, that the cotton should be actually delivered and received in kind at the future period mentioned. It seems to us, therefore, that the Circuit Judge erred when, after stating the terms of the statute (sec. 1860, Rev. Stat. of 1893,) setting forth the above requirements, and declaring that the burden of proof should be upon the plaintiff to establish the same, he held as follows: "Now the question is, upon whom does the obligation rest to say whether or not he has shown this by the burden of the proof? Upon the Court; especially so, since the evidences of the contract are in writing. These are matters of evidence that the Court must construe, and construing these telegrams in conection with the testimony of one of the plaintiffs, I am unable to see wherein he has shown that the requirements as contained in section 1860, which I have just read, have been complied with." While it is true that the statute does place the burden of proof that the requirements of that section have been complied with, upon the plaintiff, yet such a statutory provision certainly cannot have the effect of abrogating the constitutional provision which, in actions at law, makes the jury exclusive judges of the facts, without any interference or even aid from the Court. Nor does the fact that the testimony happened to be in writing, justify the Court in undertaking to pass upon the force or effect of the facts which happen to be in writing. For while the rule is well settled that it is for the Court to construe a contract in writing, or any other written instrument which may be offered in evidence upon the trial of a case, we do not understand that such rule goes to the extent of authorizing the Court to pass upon the force and effect of facts which may be stated in a letter or telegram, or in the written testimony of a witness examined before a referee or by commission. This alone would be

sufficient to require this Court to reverse the order of non-suit for error of law therein.

But, in addition to this, it seems to us that there was, at least, *some* testimony tending to show that Hopkins, Dwight & Co., when the contract of sale was made, if not the owners, were at least authorized to make the sale, and *some* testimony to show that, at the time of making the contract, both parties intended that the cotton should be actually delivered and received in kind at the future period mentioned; but whether such testimony was *sufficient* to establish either or both of those facts, was a question exclusively for the jury.

The judgment of this Court is, that the judgment of non-suit be reversed and the case remanded for a new trial.