## 10578

### OXWELD ACETYLENE CO. v. DAVIS.

#### (106 S. E. 157)

1. SALES—ORDER FOR GOODS IS A PROPOSAL AND BECOMES EXECUTORY CONTRACT UPON ACCEPTANCE AND EXECUTED UPON DELIVERY.—An order for goods is but a proposal, and is not a contract until accepted by the seller, and upon written acceptance it becomes an executory contract, and when the seller delivers the goods it becomes executed.

2. SALES—BUYER MAY COUNTERMAND BEFORE SELLER'S ACCEPTANCE IN ABSENCE OF CONTRARY AGREEMENT.—A mere proposal to purchase goods may be countermanded by the buyer without liability at any time before seller's acceptance, unless there be an agreement founded upon a consideraton that there shall be no countermand.

3.  SALES—BUYER MAY NOT COUNTERMAND—Where contract forbids ·
    cancellation without written agreement after seller's acceptance of
    buyer's order, the contract becomes executory in the absence of an
    express contrary stipulation, and the buyer may before delivery stop
    performance by explicit direction, though he subjects himself to pay-
    ment of damages, but such right does not exist where the contract
    provided that it could not be cancelled or revoked by either party
    after acceptance of order except by agreement in writing.

4.  SALES—SELLER'S REMEDY FOR BUYER'S COUNTERMAND AFTER DELIVERY
    OF GOODS IS BY ACTION FOR PRICE.—Where an executory sales con-
    tract has become executed by delivery of the goods according to
    the contract's terms, the buyer's right to countermand is gone, and
    the seller's remedy is an action for the purchase price.

5.  SALES—DELIVERY TO CARRIER IN ACCORDANCE WITH CONTRACT IS
    DELIVERY TO BUYER.—Delivery of goods to a carrier according to
    the contract was delivery to the buyer.

6.  SALES—SELLER MAY DELIVER WITHIN REASONABLE TIME WHERE
    CONTRACT FIXES NO DATE.—Where a written sales contract specified
    no time for delivery, seller was authorized to ship goods within
    a reasonable time.

7.  PRINCIPAL AND AGENT—PROVISION THAT VERBAL AGREEMENT SHALL
    NOT AFFECT WRITTEN CONDITIONS ESTOPS PARTY FROM CLAIMING
    OTHERWISE.—Where buyer signed an order for goods on a paper fur-
    nished by seller's agent providing that no verbal statements of
    the agent or representative of seller should modify the terms of
    the writing, buyer is estopped to defend an action for his failure
    to accept the goods on the ground of an oral agreement with the
    agent for a later delivery.

Before SEASE, J., Laurens, May, 1920.    Affirmed.

Action by Oxweld Acetylene Co. against S. J. Davis.
From a directed verdict for plaintiff the defendant appeals.

*Mr. F. P. McGowan,* for appellant, cites: *Duty of seller
on breach of contract by buyer*: 2 Benj. on Sales, Sec. 1165;
81 S. C. 10; 28 S. C. 230; 74 S. C. 206; 37 S. C. 7. *Buyer
never accepted goods*: 85 S. C., 15 S. C. 123. *Premature
shipment was violation of contract*: Cases on Contracts
384; Mechem Sales, Sec. 1004.

*Messrs. Dial & Todd,* for respondent, cite: *Proof of quality of other similar plants admissible* : 24 R. C. L. 163; 106 U. S. 342; 27 U. S. (L. Ed.) 100; L. R. A. 1915 B, 626. *Error, if any, was harmless* : 59 S. C. 589. *Delivery to carrier is delivery to buyer* : 23 R. C. L. 1423; 24 R. C. L. 40, 45; 100 S. C. 135; 59 S. C. 588. *Countermand received after shipment will not prevent recovery* : 88 S. W. 981; 46 S. C. 220; 89 S. C. 471.

February 28, 1921.

The opinion of the Court was delivered by Mr. Justice Cothran.

Action upon a written contract for the sale of a gaslighting outfit, to recover the agreed purchase price; the plaintiff alleging delivery in accordance with the contract and nonpayment by the defendant.

On March 26, 1918, the defendant signed a written order for a lighting outfit to be furnished by the plaintiff f. o. b. at its factory, for which he agreed to pay $243.75. The order was obtained by an agent of the plaintiff. He promptly forwarded it to the home office, where it was duly accepted by the plaintiff on March 30th. On April 3rd the outfit was delivered to a common carrier at Chicago, consigned open to the defendant at Laurens, S. C. The shipment arrived at Laurens on April 22d. The defendant was promptly notified of its arrival, but declined to accept it. The goods remained in the hands of the terminal carrier for the time required by law, at the expiration of which they were sold by the carrier for charges as unclaimed freight, at what is commonly known as an "old hoss" sale, and we assume have become practically a total loss to both parties to this controversy.

On the 8th of April, five days after the goods were delivered by the plaintiff to the common carrier for transportation, the defendant wrote to the plaintiff, asking them

to cancel his order for the lighting plant. This letter was received by the plaintiff on April 11th and was answered on the 12th, the plaintiff declining to accede to the request, and stating, "Your contract was accepted by this company on March 30th and is not subject to countermand." The defendant replied to this letter on April 16th, reiterating his countermand, and declaring that he would not take the outfit at any price, as he had learned "they are dangerous."

The defendant interposed several defenses to the action: (1) That the agreement was that the outfit should not be shipped until August 1st; that the shipment on April 3d was therefore premature; (2) that the contract was induced by the fraudulent misrepresentations of plaintiff in reference to the quality and adaptability of the machine to domestic uses; (3) that the order had been countermanded soon after it was given; (4) that the plaintiff by its negligence had brought upon itself the loss occasioned by the defendant's countermand and refusal to accept the outfit. At the conclusion of all of the testimony each party moved for a directed verdict; the issue being dependent upon the efficacy of the foregoing defenses. The Circuit Judge granted the motion of the plaintiff and a verdict in its favor was returned for $260.81.

The main question in this case is the right of the defendant to countermand the written order for the lighting outfit signed by him on March 26, 1918.           .•.

An order for goods is but a proposal; it is not a contract until it has been accepted by the seller. Upon written acceptance, it becomes a contract executory, although in a sense executed, just as the formal execution of a note or mortgage or other contract by which for a valuable consideration one agrees to do or not to do a particular thing does not alter the executory character of such engagement.

When the seller acts upon the accepted order by delivering the goods, the engagement assumes the character of an executed contract.

While the written order for the goods remains unaccepted by the seller, being a mere proposal, it may at any time be countermanded by the buyer, without any legal liability on his part to the seller, unless, as suggested by the Court in *Moneyweight Scale Co. v. Gordon Mercantile Co.*, 102 S. C. 419, 86 S. E. 1060, there be an agreement founded upon consideration that there shall be no countermand.

After the order has been accepted by the seller and the proposal thereby becomes an executory contract, in the absence of an express stipulation in the contract to the contrary, the buyer may before delivery recall the order and stop performance on the other side by an explicit direction to that effect, though he thereby subjects himself to the payment of such damages as will compensate the other party for the loss he may have sustained by reason of having his performance of the contract checked.   This right, however, does not exist where it is expressly denied by the terms of the contract, as in this case, the contract providing:

"Upon the acceptance of this order the contract so made cannot be canceled or revoked by either party * * * except by agreement in writing."

The defendant's right to countermand the order therefore expired with the acceptance of the order by the plaintiff on March 30th.

There is great contrariety of opinion upon the question of the seller's appropriate remedy where the buyer has repudiated such executory contract or refuses to comply; that is, after acceptance of the order by the seller and before the delivery of the goods.  It is not neces-

sary now to decide that question, and we are not to be·understood as doing so, but we may say that the latest deliverance of this Court on the subject, in the case last cited, indicates very strongly, if it does not decide, that the remedy is an action for damages on account of the breach of the contract, and not an action for the purchase price of the goods.   See particularly the concurring opinion of Mr. Justice Hydrick.

But the situation is very different where the executory contract has become an executed contract by the delivery of the goods according to the terms of the contract.   Then the right to countermand is gone, and the remedy of the seller is an action for the purchase price.   As to this there is absolute unanimity.   *Seneca Co. v. Crenshaw,* 89 S. C. 471, 71 S. E. 1081.   *Burwell v. Chapman,* 59 S. C. 581, 38 S. E. 222; *Coates v. Early,* 46 S. C. 223, 24 S. E. 305.

This leads naturally to the further inquiry, the turning point in the case: Was delivery of the goods made by the plaintiff according to the terms of the contract prior to the attempted repudiation of the contract by the defendant?

It is not disputed that the plaintiff, in compliance with the terms of the written contract, delivered the outfit to a common carrier at Chicago for transportation to the defendant at Laurens, S. C., on April 3, 1918; that it was duly transported and arrived at destination on April 22d; that the defendant received timely notice of its arrival and refused to take it out of the depot.   If this delivery was according to the terms of the contract between the seller and the buyer, the delivery to the carrier was a delivery to the buyer. 24 R. C. L. 40, 45; *Burwell v. Chapman,* 59 S. C. 581, 38 S. E. 222; *Coates v. Early,* 46 S. E. 220, 24 S. E. 305.

The defendant, however, contends that there was an oral agreement between himself and the plaintiff's agent at the time the contract was signed that delivery should not be made before August 1st.

The contract is silent so far as a specific time for the delivery is concerned, and possibly under the authority of *Chemical Co. v. Moore,* 61 S. C. 166, 39 S. E. 346, the parol evidence referred to would be admissible, if the contract itself does not forbid it; and, if admissible, there was error in directing the verdict for the plaintiff, for the premature delivery would be no delivery, and the fact upon which the plaintiff relies to convert the executory contract into an executed contract would fade from his case; the goods remain at his risk. 24 R. C. L. 94.

The contract, while fixing no time for delivery, certainly authorized the plaintiff to ship within a reasonable time. That was a right which the plaintiff had under the written contract. To require the plaintiff to forego that right and delay the shipment until August 1st would certainly modify that existing right possibly to its prejudice. At any rate the terms of the contract would be changed to that extent. The contract provides:

"This instrument, upon such acceptance, covers all the agreements between the purchaser and the company, and that no agent or representative of the company has made any statements of verbal agreements modifying or adding to the terms and conditions herein set forth."

When that paper, a proposal for a contract, was presented to the plaintiff for its acceptance, this positive statement, over the signature of the defendant, appeared therein, and it must be assumed that the plaintiff acted upon it when its acceptance was affixed to it. The defendant is estopped from disputing the contents of his proposal. It is doubtless true that the form of this order was prepared and printed and furnished by the plaintiff, but that is not more than it

had the right to do; and, if the public continues to sign papers without reading them and fails to incorporate in them the terms of their oral agreement, they have only themselves to blame.

Several questions raised by the exceptions have not been considered for the reason that the appellant's attorney has not discussed them in his brief.

The judgment of the Court is that the judgment of the Circuit Court be affirmed.